IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **YARITZIANNE FIGUEROA COLLAZO,** *Plaintiff,* v. **FERROVIAL CONSTRUCCIÓN PR, LLC; et al.,** *Defendants.* | **CIVIL NO. 20-1612 (DRD)** |

**OPINION AND ORDER**

Pending before the Court is Defendants, Ferrovial Construcción PR, LLC (hereinafter, "Ferrovial"), Ulises Nazario-Montalván (hereinafter, "Nazario") and Manuel Sánchez-Pereira's (hereinafter, "Sánchez") (collectively, the "Defendants") *Motion to Dismiss Second Amended Complaint.* *See* Docket No. 21. Plaintiff, Yaritzianne Figueroa-Collazo (hereinafter, "Figueroa-Collazo") filed her respective *Response in Opposition* thereto. *See* Docket No. 22. A *Reply* was filed by the Defendants thereafter. *See* Docket No. 25.

For the reasons stated herein, the Court **GRANTS** the Defendants' *Motion to Dismiss* (Docket No. 21).

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Pursuant to the *Second Amended Complaint* (Docket No. 19)[1], "[t]his is a civil action for wrongful, illegal, and retaliatory termination of employment and interference of rights under federal and Puerto Rico law." Docket No. 19, ¶ 1. Plaintiff alleges to have been terminated in her

---

[1] On February 2, 2021 a *Second Amended Complaint* was filed with the Court's leave, therefore, becoming the operative pleading.

employment with Ferrovial in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq.*; the Family Medical Leave Act ("FMLA"), 29 U.S.C.; 2611, *et seq*; the "Families First Coronavirus Response Act" ("FFCRA"); the "Emergency Family and Medical Leave Expansion Act"("EFMLEA"); and the "Emergency Paid Sick Leave Act" ("EPSLA"), including the anti-retaliation and interference of rights provisions mentioned in said legislation. Therefore, federal jurisdiction is invoked pursuant to 28 U.S.C. § 1331. *See id.*, ¶ 2.

Plaintiff further invokes the Court's supplemental jurisdiction as to Puerto Rico law claims for wrongful termination pursuant to the Puerto Rico Unjust Dismissal Act, Law 80 of 1976, as amended, PR Laws Ann. Tit. 29 § 185, *et seq.*, and for retaliatory termination under the Puerto Rico Anti-Reprisal Act, Law 115 of 1991, as amended, PR Laws Ann. Tit. 29 § 194, *et seq. See id.*, ¶ 3. The facts pertinent to the instant petition for dismissal are summarized herein as follows.

This lawsuit stems from Plaintiff's termination of her employment as an Administrative Assistant for Defendant, Ferrovial. Pursuant to the *Second Amended Complaint*, Plaintiff "is the mother with [legal] custody and *patria potestas* of a nine (9) year old child," who is in the Fourth Grade of school. *Id.*, ¶ 10. Due to the COVID-19 Pandemic, the child's school established a remote school program that ran Mondays through Thursdays from 8:00 a.m. to 1:00 p.m. *See id.*, ¶ 11. Accordingly, Plaintiff had to be available at home to assist her son in schoolwork. *Id.*[2] As such, on August 31, 2020, Plaintiff notified Codefendant Nazario by e-mail that,

> [d]ue to the situation of Covid-19, I am affected for my son's studies, because the person I had in charge started to work. My son studies from Monday through Thursday from 8:00 to 1:00pm. The days I can work in the office all day are Tuesdays and Fridays. I can work Mondays, Wednesday[s] and Thursday[s] remotely from home, as well as reporting to office. This request must be answered

---

[2] The Court takes notice of the School Certification which confirms that the school was in virtual mode for the school year 2020-21 from 8:00 a.m. to 1:00 p.m. until further notice. *See* Docket No. 19, Exhibit 1.

no later than tomorrow, September 1, 2020. If there is any change, I will be notifying you in time."

Docket No. 19, Exhibit 2. According to Plaintiff, she "needed and requested from Defendants the necessary time to viabilize[sic.] her son's schooling needs first verbally then in writing. Nevertheless, [Plaintiff] made all efforts to avoid depriving Defendants of her services while complying with her legal duties and obligations to her son's schooling needs." Docket No. 19, ¶ 12.

Plaintiff further contends she was provided notice of the enactment of the FFCRA (that includes the EFMLEA and the EPSLA) by Ferrovial. *See id.* ¶¶ 14, 17, 18. As such, she was aware of the existence of paid leave if unable to work (or work remotely) should the schooling needs of her son so requires due to interruptions in the school program during the COVID-19 Pandemic. *Id.* In sum, Ferrovial informed Plaintiff her rights to leave to care for her minor son whose school's program was affected by the COVID-19 Pandemic. *See id.* Accordingly, even when Plaintiff was "mindful of her rights to a leave under federal law to care for her son's schooling needs due to COVID-19 Pandemic, [she] took the initiative to address her employer about her situation," and instead of requesting leave pursuant to the FMLA, FFCRA and EPSLA, she choose to request a work arrangement which would allow her to work some days in the office while others remotely. *See id.*, ¶¶ 15, 16.

Ferrovial ultimately granted Plaintiff's request by allowing her to work part of her daily schedule remotely. *See id.*, ¶ 21. Notwithstanding, Plaintiff was terminated from her employment on September 11, 2020 without being provided the grounds for her termination. *See id.*, ¶ 23. Plaintiff argues that the immediate temporal proximity between her request for change as to work arrangements and her termination "creates an[] inference that her termination was illegal

3

and for prohibited grounds and directly related to having availed herself and invoked the protection of legally afforded rights for a mother to care for her minor son's schooling needs during the COVID-19 Pandemic." *Id.*

Thereupon, Plaintiff filed the instant *Complaint* citing violations to federal and state laws, such as the fact that she was terminated even when she was the Administrative Assistant with more seniority. *Id.*, ¶ 26. Plaintiff argues that in the event that there is any reduction of force or reorganization due to economic issues, Puerto Rico Law 80 requires for dismissals to be done following seniority. *Id.*, ¶ 27. Furthermore, Plaintiff alleges that by terminating her employment, she was deprived from exercising the "alternative and all intentions to request the federally protected leave under the FFCRA that (includes EFMLEA and the EPSLA) to deal with her son's schooling needs." *Id.*, ¶ 28. Plaintiff is, thus, seeking redress from the alleged illegal termination such as loss of income and benefits, as well as compensatory damages for mental pain and anguishes. *Id.*, ¶ 30.

As a result thereof, the Defendants filed a *Motion to Dismiss Second Amended Complaint* (Docket No. 21). Essentially, Defendants argue that "Plaintiff's allegations show that she never requested leave under any of the invoked statutes [FFCRA, EFMLEA and EPSLA), and that she had no right to enjoy the paid leave provided therein to the extent that she could continue to work (or telework) while caring for her child." Docket No. 21 at 21. Moreover, Defendants argue that Plaintiff has failed to establish any basis for individual liability as to management employees, Sanchez and Nazario. *Id.* Finally, the Defendants seek for all supplemental claims under Puerto Rico law to be dismissed as Plaintiff has failed to state a claim upon which relief can be granted as to all federal claims. *Id.*

**I.   STANDARD OF REVIEW**

A motion to dismiss may be filed pursuant to Federal Rule of Civil Procedure 12(b)(6) which states that "a party may assert [. . .] defense by motion [of] failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint in a suit must clearly state all of the plaintiffs' claims against the defendants and specify a claim for relief stating the remedy that plaintiffs believe should be granted to them. Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).') (*quoting Twombly*, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id*. at 570; *see e.g., Ashcroft v. Iqbal*, 556 U.S. 662

When considering a motion to dismiss under the above rule, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, and *Iqbal*. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions,

conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (*quoting Iqbal*, 556 U.S. 678) (*quoting Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id*.

Thus "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (*citing Twombly* 550 U.S. at 567).

Further, the First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (*citing Twombly*, 550 U.S. at 556). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations,

taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 39 n. 6 (1st Cir. 2012) (emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id*. at 596; *see* Iqbal, 556 U.S. at 681 ("To be clear, we do not reject bald allegations on the ground that they are unrealistic or nonsensical. . .. it is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen out rhetoric masquerading as litigation.").

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id*. at 104. Second, district courts should accord "some latitude

7

in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id*. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (internal citations and quotations omitted).

## II.   APPLICABLE LAW

### A. *Families First Coronavirus Response Act ("FFCRA")*

The FFCRA was enacted by Congress in order to, among other matters, provide certain employees with paid leave when said leave is necessary because of a limited number of reasons related the COVID-19 Pandemic. Included in the FFCRA are the Emergency Paid Sick Leave Act (EPSLA) and Emergency Family and Medical Leave Expansion Act (EFMLEA), which will be discussed individually in order to avoid potential confusion.

1. <u>The Emergency Paid Sick Leave Act (EPSLA)</u>

The EPSLA requires certain employers to provide paid sick leave to employees who are unable to work due to a need for leave as to one of six (6) possible COVID-related reasons. Specifically, § 5102 provides in its pertinent part that,

> [an] employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because:
>
> . . .
>
> (5) The employee is caring for a son or daughter of such employee if the school or place of care of the son or daughter has been closed, or the child care provider of such son or daughter is unavailable, due to COVID-19 precautions.

FFCRA § 5102(a)(5); *see* 29 C.F.R. § 826.20. It is further explained that, "[a]n Employee may not take Paid Sick Leave to care for his or her Son or Daughter unless, but for a need to care for an

8

individual, the Employee would be able to perform work for his or her Employer, either at the Employee's normal workplace or by Telework." 29 C.F.R. § 826.20(a)(6). Therefore, in order to qualify for the EPSLA, the employee must be unable to work or telework in order to take care of their son or daughter while the school is closed due to COVID-19 precautions.

The EPSLA further specifies a list of prohibited acts. Namely, it is unlawful "for an[] employer to discharge, discipline, or in any other manner discriminate against any employee who—(1) takes leave in accordance with this Act; and (2) has filed any complaint or instituted or caused to be instituted any proceedings under or related to this Act . . ." FFCRA § 5104. Any violations thereto shall constitute violations to 28 U.S.C. §§206 and 215(a)(3) of the FFCRA. *See id.*, § 5105. Therefore, failing to provide the paid leave under EPSLA is a violation to federal wages under the FLSA. Furthermore, any discrimination as to the employee taking said leave, or filing and/or participating in a complaint related thereto, is a violation of the anti-retaliation provision contained in the FLSA.

    2. <u>The Emergency Family and Medical Leave Expansion Act ("EFMLEA")</u>

Generally, the EFMLEA temporarily amends the FMLA to expand its applicability to certain employees for up to 12 weeks of paid leave per year "because of a qualifying need related to a public emergency." 28 U.S.C. § 2612(a)(1)(F). The term "qualifying need related to a public emergency" refers to when "<u>the employee is unable to work (or telework)</u> due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, . . . due to a public emergency." 29 U.S.C. § 2620(a)(2)(A)(emphasis ours). Therefore, similar to the EPSLA, in order to qualify for the EFMLEA the employee must be unable

to work or telework in order to tend to a child whose school is closed due to a public emergency in relation to the COVID-19 Pandemic.

Furthermore, the United States Department of Labor (hereinafter, "DOL") issued a section of questions and answers wherein one of the questions is "[i]f I am or become unable to telework, am I entitled to paid sick leave or expanded family and medical leave?", to which the DOL responded that,

> If your employer permits teleworking—for example, allows you to perform certain tasks or work a certain number of hours from home or at a location other than your normal workplace—and you are unable to perform those tasks or work the required hours because of one of the qualifying reasons for paid sick leave, then you are entitled to take paid sick leave.
>
> Similarly, if you are unable to perform those teleworking tasks or work the required teleworking hours because you need to care for your child whose school or place of care is closed, or child care provider is unavailable, because of COVID-19 related reasons, then you are entitled to take expanded family and medical leave. Of course, <u>to the extent you are able to telework while caring for your child, paid sick leave and expanded family and medical leave is not available</u>.

U.S. Department of Labor, *Families First Coronavirus Response Ac: Questions and Answers* at Question 19.[3] (Emphasis ours).

Furthermore, the EFMLEA provides that "the first 10 days for which an employee takes leave . . . may consist of unpaid leave." 29 U.S.C. § 2620(b)(1).  Whereas, the "employer shall provide paid leave for each day of leave . . . that an employee takes after taking leave under such section for 10 days." *Id.* at § 2620(b). The acts that are prohibited as to FMLA, are equally prohibited as to EFMLEA, such as, interference with the exercise of rights, discrimination, and interference of proceedings. *See* 29 C.F.R. § 826.151(a). Pursuant to FMLA, "[i]t shall be unlawful

---

[3] https://www.dol.gov/agencies/whd/pandemic/ffcra-questions, September 10, 2021.

for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the act]." 29 U.S.C. § 2615(a)(2). It is equally unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Lastly, the enforcement provisions as to the FMLA are equally applicable under EFMLEA. 29 C.F.R. § 826.151(b); 29 U.S.C. § 2617.

Generally, a *prima facie* interference standard requires for the employee to demonstrate that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 722 n. 8 (1st Cir. 2014). Although the issue of individual liability under the FMLA is undecided on the First Circuit, "[m]ost courts have held that individual liability is appropriate in some circumstances for officers and supervisors under the FMLA definition of 'employer' and parallel Federal Labor Standards Act definition." *Bonilla v. Electrolizing, Inc.*, 607 F.Supp. 2d 307, 324 n. 18 (D.R.I. 2009). Other circuits, such as the Second Circuit, "apply the economic-reality test used to analyze individual liability in the FLSA to the FMLA case[s]." *Graziadio v. Culinary Institute of America*, 817 F.3d 415, 422 (2nd Cir. 2016).

### B. Proper Notice under EPSLA and EFMLEA

Employees are required to provide proper notice of their need to leave in both EPSLA and EFMLEA. Accordingly, when the reason for requesting leave is to care for a son or daughter whose school or place of care is closed or unavailable due to COVID-19 restrictions, "<u>if that leave [is] foreseeable, [the] employee shall provide the employer with notice of such paid sick Leave or expanded family and medical leave as soon as practicable. If an employee fails to give proper</u>

notice, the employer should give him or her notice of the failure and an opportunity to provide the required documentation prior to denying the request for leave." 29 C.F.R. § 826.90(a)(2).

When requesting leave under EPSLA and EFMLEA, employees are required to provide the following documentation to the employer: "(1) Employee's name; (2) Date(s) for which leave is requested; (3) Qualifying reason for the leave; and (4) Oral or written statement that the Employee is unable to work because of the qualified reason to leave." 29 C.F.R. § 826.100(a)(Emphasis ours). In turn, when requesting leave due to a COVID-19 related reason, such as, taking leave due to the unavailability of the school or child care center, the employee must also provide: "(1) the name of the son or daughter being cared for; (2) the name of the school, place of care, or child care provider that has closed or become unavailable; and (3) a representation that no other suitable person will be caring for the son or daughter during the period for which the employee takes paid sick leave or expanded family and medical leave." *Id.*, § 826.100(e)(emphasis ours). Therefore, both EPSLA and EFMLEA are very specific as to the notification and additional documentation required when an employee must request leave due to COVID-19 restrictions as to the son or daughter's school or childcare's unavailability.

### III. LEGAL ANALYSIS

As previously discussed, Plaintiff was an Administrative Assistant for Ferrovial from August 24, 2018 until September 11, 2020 when she was terminated by the employer. *See* Docket No. 19, ¶ 8. She is the mother with custody and *patria potestas* of a nine (9) year old child who at the time the events took place, was in Fourth Grade. Due to the COVID-19 Pandemic, the school established a remote schooling program from Mondays through Thursdays from 8:00 a.m. to 1:00 p.m. *Id.*, ¶¶ 10-11. Accordingly, "Figueroa mindful of her rights to a leave under federal

law to care for her son's schooling needs due to the COVID-19 Pandemic, took the initiative to address her employer about her situation. First she did it verbally and then very specifically on August 31st, 2020, she informed in writing to Nazario her need for time to care for her son's schooling demands due to the COVID-19 Pandemic." *Id.*, ¶ 15 (emphasis ours). The e-mail sent by Plaintiff stated that,

> [d]ue to the situation of Covid-19, I am affected for my son's studies, because the person I had in charge started to work. My son studies from Monday through Thursday from 8:00 to 1:00pm. The days I can work in the office all day are Tuesdays and Fridays. I can work Mondays, Wednesday and Thursday remotely from home, as well as reporting to office after 1:30 pm. This request must be answered no later than tomorrow, September 1, 2020. If there is any change, I will be notifying you in time.
>
> Cordially,
>
> Yaritzianne Figueroa Collazo.

Docket No. 19, Exhibit 2 at 1-2 (emphasis ours). Plaintiff also submitted a certification from her son's school, confirming that the school was in virtual mode until further notice pursuant to the government's executive orders. Said document included the name of the person in charge, the name of the school, the name, social security number and age of the student, the grade he is attending as well as the arrangements made in school due to the Pandemic. *See* Docket No. 19, Exhibit 1 at 3. Thereupon, "Figueroa's request for the needed time to care for her son's schooling needs was granted by Defendants by allowing her to work part of her daily schedule remotely for three (3) days a week." Docket No. 19, ¶ 9. According to Plaintiff, "Defendants ha[d] previously informed [her] that the new federal legislation protected her and ma[d]e it feasible for the employer to grant time to the mother of a minor son that needs time to care for her son['s]

13

schooling[] needs due to interruptions to ordinary school programs due to the COVID-19 Pandemic." *Id.*, ¶ 18.

The EPSLA requires certain employers to provide paid leave to an employee when "[t]he employee is caring for a son or daughter of such employee if the school or place of care of the son or daughter has been closed, or the child care provider of such son or daughter is unavailable, due to COVID-19 precautions. FFCRA § 5102(a)(5). In turn, the EFMLEA temporarily expands the applicability of the FMLA to certain employees for up to 12 weeks of paid leave per year "because of a qualifying need related to a public emergency." 28 U.S.C. § 2612(a)(1)(F). However, in order to qualify for said leave, both the EPSLA and the EFMLEA require for the employee to be unable to work or telework in order to tend to a child whose school is closed due to a public emergency in relation to the COVID-19 Pandemic.

Taking the allegations included in the *Second Amended Complaint* in light most favorable to Plaintiff, it has been established that Ms. Figueroa requested permission to combine her hours of work between in person and remote work (hereinafter, "hybrid accommodation") in order to accommodate her son's schooling needs during the COVID-19 Pandemic. Plaintiff specifically argues that she was informed by the employer as to the federal legislation which protected her and made it possible for her to take leave for up to 12 weeks to tend to her son's needs. However, Ms. Figueroa ultimately decided to request a hybrid work accommodation. The DOL clarified that **"to the extent [the employee is] able to work while caring for [her] child, paid sick leave and expanded family and medical leave is not available."** U.S. Department of Labor, *Families First Coronavirus Response Act: Questions and Answers* at Question 19.[4] (Emphasis ours).

---

[4] https://www.dol.gov/agencies/whd/pandemic/ffcra-questions, September 10, 2021.

Ferrovial granted Ms. Figueroa's request for a hybrid accommodation but ultimately terminated her from employment on September 11, 2020. *See* Docket No. 19, ¶ 23. The Court recognizes there is temporal proximity between the date in which Plaintiff requested the hybrid accommodation and her eventual termination eleven (11) days thereafter. Notwithstanding, in order for Plaintiff to qualify under EPSLA and EFMLEA, employees are required to provide the following documentation to the employer: "(1) Employee's name; (2) Date(s) for which leave is requested; (3) Qualifying reason for the leave; and (4) Oral or written statement that the Employee is unable to work because of the qualified reason to leave." 29 C.F.R. § 826.100(a).

Ms. Figueroa provided her name, and a request for hybrid work accommodation. No request for leave was made, and no statement was provided as to the fact that Plaintiff was unable to work because of a qualified reason to leave, which prevents her from qualifying to the protections provided by federal law as to her son's schooling needs, should they be properly requested pursuant to the applicable legislation. The fact that Ms. Figueroa would have requested federal benefits should the employer have denied her hybrid accommodation request is mere speculation. There is no allegation in the *Second Amended Complaint* suggesting that she requested paid leave pursuant to federal legislation and that the employer refused to provide it. Plaintiff ultimately failed to request or take any leave pursuant to the applicable statutes, therefore, she did not qualify to enjoy paid leave provided that she could continue to work (or telework) while taking care of her son. <u>Even if the EFMLEA and EPSLA are to be construed liberally, in reality, Plaintiff merely requested a hybrid work accommodation, not paid leave pursuant to the federal legislation</u>. Therefore, requesting telework cannot be considered a

protected conduct as suggested by Plaintiff. Hence, Plaintiff's claims pursuant to EPSLA and EFMLEA fail as a matter of law.

### C. Individual Liability under FLSA or the FMLA as to Codefendants, Ulises Nazario Montalván and Manuel Sanchez-Pereira

Although the issue of individual liability under the FMLA is undecided on the First Circuit, "[m]ost courts have held that individual liability is appropriate in some circumstances for officers and supervisors under the FMLA definition of 'employer' and parallel Federal Labor Standards Act definition." *Bonilla v. Electrolizing, Inc.*, 607 F.Supp. 2d 307, 324 n. 18 (D.R.I. 2009). Other circuits, such as the Second Circuit, "apply the economic-reality test used to analyze individual liability in the FLSA to the FMLA case[s]." *Graziadio v. Culinary Institute of America*, 817 F.3d 415, 422 (2nd Cir. 2016).

Particularly, under FLSA, in order to determine personal liability, the economic reality test is applied pursuant to First Circuit precedent. *See Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 677 (1st Cir. 1998). Said analysis focuses on the following elements: "significant ownership interest of the corporate officers; their operational control of significant aspects of the corporation's day to day functions, including compensation of employees; and the fact that they personally made decisions to continue operating the business despite financial adversity and the company's inability to fulfill its statutory obligations to its employees." *Id.*, at 677-678. "They are 'relevant' but 'not dispositive' indicia of the ultimately determinative factor: the role played by the individual in 'caus[ing] the corporation to compensate (or not to compensate) employees in accordance with FLSA.' *Pineda v. Skinner Servs., Inc.*, No. CV 16-12217-FDS, 2020 WL 5775160, at *18 (D. Mass. Sept. 28, 2020)(*quoting Baystate*, 163 F.3d at 678). However, it is critical to note,

that "not every corporate employee who exercised supervisory control should be held personally liable." *Chao v. Hotel Oasis*, 4593 F.3d 26, 34 (1st Cir. 2007).

Additionally, Federal courts are yet to address whether individual liability attaches in claims regarding the EPSLA and EFMLEA. If so, it is safe to assume that its application would be similar to that employed in FLSA cases. *See Bayside*, 163 F.3d at 677. As previously stated, the determinative factor is the role played by the individual who was responsible for the corporation compensating or not employees within the FLSA. *See Pineda*, 2020 WL 5775160 at *18 (*quoting Baystate*, 163 F.3d at 678).

Notwithstanding, the Defendants argue that "Plaintiff has incurred in impermissible group pleadings" by not alleging relevant facts as it pertains to Codefendants, Nazario and Sánchez. Docket No. 21 at 20. Plaintiff instead cites portions of the *Second Amended Complaint* while arguing that "[t]he FMLA defines an 'employer' to include any person who acts directly or indirectly, in the interest of an[] employer to any of the employees of such employer. 29 U.S.C. 2611(4)(a)(ii)(I); 29 C.F.R. 825 104(d)." Docket No. 22 at 12. Therefore, according to Plaintiff, "individual liability has been duly pleaded in this case." *Id.*

Ordinarily, a "complaint should at least set forth minimal facts as to who did what to whom, when, where, and why—although why, when why means the actor's state of mind, can be averred generally." *Educadores Puertorriqueños en Acción v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004). In order to survive a motion to dismiss under Rule 12(b)(6), pleadings with "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). Therefore, "[w]hile [a] 'group pleading' is not prohibited *per se*, the complaint must allege a

plausible claim against each defendant." *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *10 (D. Mass. July 20, 2015). The question before the Court is "whether, as to each defendant, [the] plaintiff's pleadings are sufficient to state a claim on which relief can be granted." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) Upon reviewing the *Second Amended Complaint*, the Court finds Plaintiff's allegations as to individual liability insufficient and briefly explains.

Initially, Plaintiff claims that "Mr. Manuel Sánchez Pereira and Mr. Ulises Nazario Montalván) acting directly or indirectly in the interest of an employer in relation to an employee within the meaning of such phrase in Section 3 (d) of the FLSA, 29 U.S.C. 203 (d) and Section 101 (4)(A)(ii)(I) of the FMLA, 29 U.S.C. 2611 (4)(A)(ii)(I); 29 C.F.R. 825. 104d). This is the situation with the individuals sued in their individual capacity in this action." Docket No. 19, ¶ 6. Plaintiff further specifies the nature of Mr. Sánchez and Mr. Pereira's job descriptions, to wit,

> Defendants in this action are Ferrovial (priorly Ferrovial Agroman LLC), a limited liability corporative organized and authorized to do business in Puerto Rico by State Department of Puerto Rico; Mr. Manuel Sánchez Pereira ("Sánchez"), Financial Director of Ferrovial; and Ulises Nazario Montalvan ("Nazario"), Figueroa's direct supervisor. Both Sánchez and Nazario directly or indirectly acted in the interest of Ferrovial in relation to Figueroa and were directly involved in the adverse employment decisions, retaliatory and interference of rights conduct relevant in this action. These are the persons that took the adverse employment actions against plaintiff. All defendants are considered an employer, and otherwise suable in their corporate or individual capacity as applicable under the federal legislation invoked in this action.

*Id.*, ¶ 9. Besides from the initial allegations describing the Defendants, Plaintiff specifically refers to Mr. Nazario when alleging that "on August 31st, 2020, she informed in writing to Nazario (who asked her to make her request in writing) her need for time to care for her son's schooling demands due to the COVID-19 Pandemic." *Id.*, ¶ 15. No other mention is made as to the individual

defendants other than the fact that "Defendants actually granted her request." *Id.*, ¶ 21. As the allegations in the *Second Amended Complaint* fail to provide sufficient basis for a plausible claim for relief as to Nazario and Sánchez's individual liability under FLSA, Plaintiff fails to state a claim upon relief can be granted as to individual liability.

Notwithstanding, given the fact that Ms. Figueroa failed to request or take any leave pursuant to applicable federal statutes, and instead requested a hybrid work accommodation from the Defendants, her federal claims fail as a matter of law, and, as such, this matter is moot.

### D. Supplemental claims under Puerto Rico Law

Federal jurisdiction exists when a well-pleaded complaint necessarily "requires the resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). In essence, Federal Courts by their very nature are courts of limited jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). The presumption is that a federal court lacks jurisdiction. *Kokkonen*, 544 U.S. at 377, 114 S.Ct. 1673. Consequently, the burden is on the plaintiff who claims jurisdiction to affirmatively allege and prove jurisdiction. *Id.* To bring a civil action within the court's subject matter jurisdiction, a plaintiff must allege that his action involves either a federal question or diversity jurisdiction. *See* 28 U.S.C. §§ 1331 & 1332.

In the instant case, it is clear that there is no diversity between the parties. Nonetheless, since Plaintiff brought claims to this forum pursuant to the FFCRA, EFMLEA and EPSLA, the Court's

jurisdiction would be based on federal question jurisdiction. Once federal jurisdiction is determined, the Court may exercise supplemental or pendant jurisdiction on a state law claim, i.e., Act 80 and Act 115 provided that it is part of the same case or controversy of the federal question before this Court. *See* 28 U.S.C. § 1367(a)(allowing a court to exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy"; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In the case at bar, all federal claims are being properly dismissed well before the commencement of trial. *See Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1175 (1st Cir. 1995). Therefore, the Court will exercise its discretion and reject exercising supplemental jurisdiction over state law claims asserted over, to wit, the Puerto Rico Unjust Dismissal Act, Law 80 of 1976, as amended, PR Laws Ann. Tit. 29 § 185, et seq., and for retaliatory termination under the Puerto Rico Anti-Reprisal Act, Law 115 of 1991, as amended, PR Laws Ann. Tit. 29 § 194*, et seq.* Accordingly, all state law claims are hereby **DISMISSED WITHOUT PREJUDICE.**

## IV.     CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS** the Defendants' *Motion to Dismiss Second Amended Complaint* (Docket No. 21). Judgment of dismissal **WITH PREJUDICE** as to all federal claims, and **WITHOUT PREJUDICE** as to all state claims is to be entered accordingly.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 30th day of September, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge